**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**


ARLENE F. NELLONS,

              Plaintiff,

              v.                    Civil No. 03-6137 (RBK)

BELL ATLANTIC CORPORATION;
BELL ATLANTIC CORPORATE
EMPLOYEES' BENEFITS COMMITTEE;
VERIZON EMPLOYEE BENEFITS
COMMITTEE,

              Defendants.


**O P I N I O N**

**KUGLER**, United States District Judge:

        The present motions for summary judgment require the Court to decide whether Arlene Nellons was entitled to receive an immediate lump sum payment of the pension benefit she earned from her seventeen years of service with Bell of Pennsylvania. After reviewing all of the relevant plan documents and communications from Bell of Pennsylvania, Bell Atlantic, and Verizon, the Court concludes that Nellons was properly denied an immediate lump sum payment of her pension benefit. Accordingly, for the reasons to follow, the Court will enter judgment in favor of Defendants and against Plaintiff.

## I.  FACTUAL BACKGROUND

Plaintiff is Arlene Nellons, a former employee of Bell of Pennsylvania.  At the time of Nellons's employment, Bell of Pennsylvania was a subsidiary of Bell Atlantic Corporation.  Bell Atlantic became, and is now known as, Verizon Communications, Inc..[1]  Nellons began working for Bell of Pennsylvania on November 22, 1971.  Her last day of employment came when she resigned on December 15, 1989.  Due to a leave of absence beginning on September 4, 1972 and ending on August 20, 1973, Bell of Pennsylvania credited Nellons with seventeen years and two months of total service.  Her birth date is June 21, 1947; Nellons was 42 years old when she resigned from Bell of Pennsylvania and is now fifty-seven years old.

Nellons's decision to resign from Bell of Pennsylvania came as a result of her participation in Bell Atlantic's 1989 Force Management Program ("FMP").  The FMP was designed to entice certain management-level employees to voluntarily resign from Bell Atlantic.  The need for such resignations, it appears, arose from Bell Atlantic's plan to restructure its operations and significantly reduce the number of management-level employees.  So instead of resorting to involuntary terminations, Bell Atlantic invited

---

[1] Plaintiff's Amended Complaint is brought against Bell Atlantic Corporation, Bell Atlantic Corporate Employees' Benefits Committee, and Verizon Employee Benefits Committee. Defendants point out in their papers that Nellons has, again, failed to name the actual ERISA plan as a defendant, making her complaint insufficient as a matter of law.  In the interest of justice, the Court will construe the Amended Complaint as having been properly brought against the Verizon Management Pension Plan.  See FED. R. CIV. P. 8(f).  For brevity's sake, the Court will refer to Defendants as "Verizon."  The Court assumes the parties understand that it is referring to the Verizon Management Pension Plan and its administrators.

certain categories of employees to apply to participate in the FMP.  Nellons applied and

was accepted to participate in the FMP.

Several documents in Defendants' Exhibit 11 list the details of the FMP.

One of those documents, a newsletter titled "An Update on Restructuring," contains the

following description of the FMP:

> The FMP offer is a lump sum cash incentive that could be worth as much as
> a full year's base salary.  Based on years of service, the payments–before tax
> withholding–will start at 5% of the base annual salary for a manager with less
> than two full years of service, rise to 10% for two full years of service and
> increase in increments of 5% for each additional full year up to the maximum
> of 100% for a manager with 20 or more full years of service.

Defendants' Exhibit 11, V 01382.

This description is typical of the various descriptions of the FMP found in

the other documents in exhibit 11.  Notably, no document that contains an explanation of

the FMP suggests that FMP participants will receive additional service credit.  One

document explains that the FMP is part of the "Bell Atlantic Separation Pay Plan"

("BASPP").  The BASPP provides significantly more detail than the newsletter, but

nonetheless fails to include any provision for an increase in service credit.  <u>See</u>

Defendants' Exhibit 10.

Though Bell Atlantic eventually offered employees the opportunity to

participate in a plan that provided the potential for a virtual increase in service credit, that

was not until 1991, under the "1991 Early Retirement Incentive Program."  That program

is described in section 4.15 of the *Bell Atlantic Management Pension Plan*, found at

exhibit 7.  The essential details of that plan are described in section 4.15(a) as follows:

> (a) <u>Incentive-Eligible Employees</u>.  Each individual who, on December 15, 1991 (the "Window Date"), is an Active Participant, or who is then a Former Active Participant . . . and who either (1) is eligible to retire on that date with an immediate Normal or Early Retirement Service Pension pursuant to the provisions of Section 4.2 or 4.3 or (2) would be so eligible if both his age and Retirement Eligibility Service were increased by three (3) years . . . shall thereafter be eligible to retire with an immediate Early or Normal Retirement Service Pension, whichever is applicable, at any time on or after the Window Date [December 15, 1991].

Defendants' Exhibit 7, at V 00852.  This 1991 program became effective after Nellons elected retirement under the FMP, and could only be applied to those who chose to retire on or after the window date, December 15, 1991.


### A.  The Relevant Pension Plans

Nellons's employment with Bell of Pennsylvania earned her a pension benefit in the Bell Atlantic Management Pension Plan ("BAMPP").  On October 9, 1990, Bell Atlantic sent Nellons a "Certificate of Right to a Deferred Vested Pension."  That document informed Nellons that she could begin receiving payments from the BAMPP no earlier than June 21, 2007.  Benefits under the BAMPP are stated only in terms of an annuity.  There is no provision in the BAMPP for a lump sum payment.  Therefore, this certificate that Bell Atlantic sent to Nellons stated that she was eligible for a monthly pension benefit of $678.78 if she elected to begin receiving payments when she turned sixty-five.  The certificate further informed Nellons that she could begin receiving a pension benefit as early as her sixtieth birthday, though on a reduced basis.

The BAMPP, which was in effect when Nellons resigned, was eventually succeeded by the Bell Atlantic Cash Balance Pension Plan ("Cash Balance Plan") and then the Verizon Management Pension Plan ("Verizon Plan").  Some parts of the Verizon Plan offer different payment methods for pension holders, but former BAMPP participants, such as Nellons, are not given the option of requesting an immediate lump sum payment.  Section 6.6(b) explains the benefit options of those in Nellons's situation, i.e., those who have yet to begin receiving their retirement benefits:

> (b) Retirement benefits for which payments have not begun by December 31, 2001, that are payable to participants in the Former Bell Atlantic Plan who do not complete a Paid Hour of Service after December 31, 2001, shall be determined (with respect to eligibility and amount) and shall be distributed (with respect to timing) in accordance with the provisions of the Former Bell Atlantic Plan as in effect as of such person's Separation From Service Date (except to the extent provided otherwise by a subsequent amendment to the Former Bell Atlantic Plan); provided, however, that (i) the forms of payment available to the participant shall be determined under Sections 6A.5 and 6A.6 of the Plan, (ii) conversion of the single life annuity benefit payable to the participant to a benefit payable in the form elected by the participant shall be determined using the factors described in Exhibit A . . . .

Defendants' Exhibit 6, at V 00149

In turn, section 6A.5 addresses the choices available for married and unmarried retirees in electing either a single life annuity or a Qualified Joint and Survivor Annuity, which provides for a reduced benefit in return for a survivor benefit payable to the retiree's spouse.  So section 6A.5 does not address lump sum payments.  Section 6A.6 addresses lump sum payments, but does not provide such an option for retirees in Nellons's situation.  In particular, section 6A.6 (b)(i) states in part, "[e]xcept as provided

otherwise in a Schedule, any Retired Employee who will qualify for a Pension under Section 5.1, 5.2, 5.3, 5.5, or 5A.1 may elect to receive his Pension in the form of a lump sum distribution." Sections 5.1, 5.2, 5.3, and 5.5 specifically exclude former BAMPP retirees, and section 5.A1 applies only to employees who complete one paid hour of service any time on or after January 1, 2002. Therefore, a lump-sum is not available to retirees such as Nellons under either 6A.5 or 6A..6.

But section 6.6, which applies to participants in the BAMPP, such as Nellons, provides for conversion of a single life annuity to a different form of payment under Exhibit A. Despite this, Exhibit A and the applicable Attachment 1 to which it makes reference do not provide for an immediate lump sum payment. For those slated to receive a Deferred Vested Pension, as Nellons is, Exhibit A states that conversion of a single life annuity to a lump sum payment is governed by Attachment 1. Attachment 1, part IV, in turn, governs conversion of a single life annuity pension to a lump sum value for those with pension commencement dates on or after January 1, 2002. Each calculation provided for in part IV centers on the value of the single life annuity on the pension commencement date. The pension commencement date is a defined term under the plan that "means the date as of which a Pension is scheduled to commence in accordance with the provisions of the Plan." Thus, Attachment 1, though it permits the possibility that Nellons may receive a lump sum payment, does not change the date on

which Nellons is entitled to begin receiving pension benefits.[2]

### B.  Benefits Action Taken with Respect to Arlene Nellons

The Verizon Plan contains an internal benefit claims review procedure. Sections 9.4 and 9.13 of the Verizon Plan explain this procedure in detail.  Section 9.4 appoints the "Employee Benefits Committee" as the plan administrator.  Due to its importance in dictating the Court's standard of review, the Court shall reproduce section 9.4 in its entirety:

> The Employee Benefits Committee shall be the Plan administrator and shall be responsible for the administration of the Plan.  In addition to any implied powers that may be necessary or appropriate to the conduct of its affairs, the Committee shall have the following powers, including the discretionary power:
>
> (a) to make and enforce such rules and regulations as it shall determine to be necessary or proper for the administration of the Plan;
>
> (b) to interpret the Plan and to decide all matters arising thereunder, including the right to remedy possible ambiguities, inconsistencies, and omissions;
>
> (c) to determine the right of any person to benefits under the Plan and the amount of such benefits;
>
> (d) to issue instructions to a Trustee or insurance company to make disbursements from the Pension Fund, and to make any other arrangement necessary or appropriate to provide for the orderly payment and delivery of disbursements from the Pension Fund;

---

[2]  An amendment to Attachment 1 provides for a different calculation of benefits commencing after December 31, 2002.  That amendment does not change, however, the date on which benefits may commence.  See Defendants' Exhibit 6, at V 00039.

(e) to delegate to other persons (including relevant persons on the Company's Human Resources staff) such of its responsibilities as it may determine;

(f) to retain an Enrolled Actuary;

(g) to employ suitable agents, actuaries, auditors, legal counsel, and other advisers as it may determine;

(h) to allocate among its members such of its responsibilities as it may determine; and

(i) to prepare, file, and distribute such forms, statements, descriptions, returns, and reports relating to the Plan as may be required by law.

Defendants' Exhibit A6, at V 00169-00170.

The Summary Plan Description for the Verizon Plan sets forth the procedure to follow for participants who claim entitlement to benefits under the Verizon Plan, which includes claims under the BAMPP.[3]  Any claim for benefits under the Verizon Plan must be delivered in writing to the claims administrator c/o Verizon Benefits Center Claims Review Unit.  The written claim must set forth the benefits being requested and the reasons why the participant is entitled to the particular benefits.  If the claim is denied, the participant can file an appeal by submitting, within sixty days of the denial of the claim, an additional written statement requesting an appeal to the Verizon Claims Review Committee c/o Verizon Benefits Center Claims Review Unit.  This is the final level of appeal.

---

[3]  Section 9.13 of the Verizon Plan also sets forth the applicable procedure and provides information consistent with the SPD.  The SPD provides information not contained in the original plan documents, such as the contact information for each level of filing claims and appeals.

The first contact of record that Nellons had with any Verizon benefits representative came on July 29, 2003 by way of a phone call.  The transcript of the phone call evidences a conversation between Nellons and a consultant by the name of Sue in which Nellons is seeking to find out the value of her pension fund.  Sue informed Nellons that, due to the fact that consultants do not release such figures over the phone, but rather send them through the mail, it would be quicker for Nellons to access Verizon's benefits website, which provides that information directly.  The call ended after Sue invited Nellons to call again if the website was not helpful or if she had any other questions.

Nellons next contacted the benefits department at Verizon by way of a letter dated July 31, 2003 and addressed to Ezra Singer, executive vice-president of human resources at Verizon.  In that letter Nellons wrote, "[b]y copy of this letter I am requesting the release of the vested money in my pension account.  This request is being made due to a financial hardship."  Nellons went on to express her dismay over the information she received from an unnamed employee in the benefits department that she could not receive any benefit until July 1, 2006 and that the benefit amount would need to be calculated manually.  On August 12, 2003, apparently in response to this letter, Verizon sent Nellons a letter containing a calculation of her pension benefit.  The letter provides a benefit commencement date of July 1, 2007, with a single life annuity of $678.78, payable at age sixty-five and a single life annuity reduced for early retirement and payable on July 1,

2007 of $678.78.[4]

Disappointed by this letter's failure to provide a calculation of the amount available immediately, Nellons contacted Verizon's benefits department.  This time, Nellons spoke with a consultant by the name of Claudia.  Nellons told Claudia that the calculation she received was not what she asked for.  Rather, Nellons was seeking a calculation for what was in her account at the time of her request.  Claudia explained to Nellons that Nellons was not eligible for an immediate lump sum payment, so a calculation of the type Nellons was seeking could not be generated.  Claudia further and ably explained, "[i]t's not a 401(k), it's not like a bank account.  They can't send out a figure because you're not eligible for it.  The system will not show you're eligible until age 60."

With a form signed and dated January 26, 2004, Nellons filed a claim for benefits with the Claims Review Unit.  In her written explanation of her claim, Nellons wrote that she was requesting a "lump sum pension payment [] because I am a retired Bell Telephone Company employee since December 1989."  Nellons went on to express her frustration with the service she had received up to that point: "I have been requesting this payment since July 2003.  Since early November 2003 I have been told by Bell Telephone representative that this claim is being processed."  The Verizon Claims Review Unit denied this request.  In a six-page letter, Andrew Laughlin of the Claim Review Unit

---

[4]  From the Court's understanding of the BAMPP, along with other calculations of Nellons's benefits found in the record, this early retirement calculation appears to be a mistake.

10

explained to Nellons that she was not eligible to receive any benefits until the year 2007. At that time, Laughlin explained, Nellons may, depending on the payment options being offered, be able to take her entire benefit in the form of a lump sum payment.  Laughlin further explained why no lump sum amount could be calculated until that time:  "Because the interest rates used to determine lump sum amounts are not set until shortly before the pension start date, it is not possible at this time to estimate accurately the lump sum that will be payable to you on June 21, 2007 . . . ."

Nellons appealed this decision to the Verizon Claims Review Committee. In her appeal letter, Nellons explained that she was not being properly credited for service.  Specifically, she explained that her participation in the 1989 FMP entitled her to at least three additional years of service and, therefore, to an immediate payment of her pension benefit.  Nellons also complained that she had not been receiving quarterly statements of her account balance "as required under the Plan and by ERISA."  Verizon denied Nellons's appeal.  In the letter communicating this denial, Donna Chiffriller, chairperson of the Verizon Claims Review Committee, explained that participation in the 1989 FMP did not entitle an employee to an increase in credited service.  Chiffriller's letter further explained that quarterly account statements were sent only to participants in the Cash Balance Plan and that Nellons was not a participant in that plan.

By the time Nellons filed her claim and subsequent appeal, she and her husband had already filed this civil suit.  Because that complaint was legally deficient in

several ways, the Court dismissed it but permitted Nellons to file an amended complaint.

See Order of May 7, 2004.  In Count One of her Amended Complaint, Nellons sets forth a

detailed factual statement but does not actually identify her cause of action, specifically.

The essence of Count One, however, is that by virtue of her participation in the 1989

FMP she is entitled to an immediate payment of her pension benefits.

In Count Two, Nellons alleges (1) "Defendant failed to uphold its fiduciary

responsibilities for maintaining current files on Plaintiff's pension account and

employment records."; (2)  "Defendant failed to provide Plaintiff with quarterly

statements/information pertaining to her Cash Balance value in her pension account as

specified by the plan and provide to ERISA"; (3) Upon Plaintiff's written request of April

22, 2004, Plaintiff maintains that the Defendant was unable or unwilling to supply her

with a complete copy of the 1989 [FMP] and or its contract for which she was a

participant as of December 15, 1989"; and (4) "Defendant failed to maintain the

important information on the 1989 (FMP) to enable Defendant to accurately access the

eligibility of Plaintiff's request to receive pension benefits at the time of her choosing

prior to age 65."  Finally, the *ad damnum* clauses of Nellons's complaint seek an Order

requiring "Defendant to pay the current cash balance value in Plaintiff's pension plan

account," which Nellons claims should be $114,035.04.  Nellons also seeks punitive

damages totaling $561,660 for Verizon's failures to provide quarterly cash balance

account statements and to properly maintain records.

## II.  STANDARDS OF REVIEW

Two standards of review are relevant to the present motions:  the standard for deciding a motion for summary judgment and the standard for reviewing decisions of an ERISA plan administrator.

### A.  Summary Judgment

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c).  In deciding whether there is a disputed issue of material fact, a court must view the facts and all reasonable inferences in a light most favorable to the nonmoving party.  Id. at 250; Anderson v. Consol. Rail Corp., 297 F.3d 242, 247 (3d Cir. 2002).

The moving party always "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Where the nonmoving party bears the burden of persuasion at trial, however, "the burden on the moving party may be discharged by 'showing'–that is, pointing out to the district

13

court–that there is an absence of evidence to support the nonmoving party's case."  Id. at

325.  The non-moving party "may not rest upon the mere allegations or denials of" its

pleadings and must present more than just "bare assertions, conclusory allegations or

suspicions" to establish the existence of a genuine issue of material of fact.  FED. R. CIV.

P. 56(e); Jalil v. Avdel Corp., 873 F.2d 701, 707 (3d Cir. 1989) (citation omitted).  "A

party's failure to make a showing that is 'sufficient to establish the existence of an

element essential to that party's case, and on which that party will bear the burden of

proof at trial' mandates the entry of summary judgment."  Watson v. Eastman Kodak Co.,

235 F.3d 851, 857 (3d Cir. 2000) (quoting Celotex, 477 U.S. at 322).


      B.  Standard of Review under ERISA

      Nellons is empowered to bring her action to recover pension benefits under

29 U.S.C. § 1132(a)(1)(B), which grants a beneficiary or participant the power to enforce

ERISA by bringing a civil action "to recover benefits due to him under the terms of his

plan, to enforce his rights under the terms of the plan, or to clarify his rights to future

benefits under the terms of the plan."

      ERISA does not provide a standard of review for actions brought under

section 1132(a)(1)(B).  Fortunately, the Supreme Court has filled in this interstice.  In

Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989) the Court, guided by

the principles of trust law, held that,"a denial of benefits challenged under section

14

1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."  Where such discretion is vested in the administrator or fiduciary, a challenged denial of benefits is reviewed under the arbitrary and capricious standard.  See id. at 115; Mitchell v. Eastman Kodak Co., 113 F.3d 433, 437 (3d Cir. 1997); Abnathya v. Hoffman-La Roche, Inc., 2 F.3d 40, 45 n. 4 (3d Cir. 1993).

        The arbitrary and capricious standard is both narrow and deferential.  Under this standard, the court cannot replace with its own judgment the judgment of the administrator in determining eligibility for benefits.  Mitchell, 113 F.3d at 439 (quoting Abnathya, 2 F.3d at 45).  Rather, a "'district court may overturn a decision of the Plan administrator only if it is without reason, unsupported by the evidence or erroneous as a matter of law.'"  Id.  Further, the Third Circuit has made it clear that where the arbitrary and capricious standard applies, it applies to issues of plan interpretation as well as to mixed questions of law and fact, such as a particular beneficiary's entitlement to benefits.  See Mitchell, 113 F.3d at 438.

        In this case, sections 9.4(b) & (c) of the Verizon Plan clearly vest the plan administrator with the discretion to construe the terms of the plan and determine eligibility for benefits.  Therefore, the Court will review the plan administrator's denial of Nellons's request for an immediate lump sum payment under the deferential arbitrary and capricious standard.  In the end, however, the standard of review will not have a

significant impact on this case inasmuch as the Court finds Verizon's decision to deny

Nellons's request for an immediate lump sum payment of her pension benefit was based

on an accurate interpretation of the Verizon Plan, including the BAMPP.


## III. DISCUSSION

It appears that Nellons is mistaken as to the extent of her pension

entitlement and the terms of the applicable plans.  This can hardly be the fault of Nellons

though.  The relevant plan documents arrived in this courthouse in several boxes

containing several binders.  Those binders comprise several versions of the ever-changing

pension plans that started with Bell Atlantic and Bell of Pennsylvania and ended, for now,

with Verizon.  Within each plan, there are references and further cross references to other

plan provisions–some of which are found in the current plan document and some of

which are found elsewhere, in other documents.  At each step of traversing and

interpreting the several plans, however, Verizon gave an accurate interpretation of the

plan as it applies to Nellons.  No provision in the Verizon Plan, which incorporates the

BAMPP, entitles Nellons to an immediate disbursement of her pension benefit.


### A.  Nellons's Claim for An Immediate Lump Sum Payment

When Nellons retired in 1989, she was eligible for annuity payments

16

beginning no earlier than 2007.  No subsequent changes to any of the pension plans have changed her entitlement.  Nellons's arguments to the contrary are unpersuasive.

In particular, the Court finds that there is no evidence tending to show Nellons was entitled to an increase in her service credit.  The 1989 FMP provided cash payments, based on years of service with Bell Atlantic, for eligible management-level employees who wished to retire.  No document in the record that relates to the 1989 FMP suggests that participants in the 1989 FMP would receive an increase in service credit.  In reaching this conclusion the Court has examined both official plan documents as well as more informal company-wide communications, including newsletters.  Therefore, Verizon's conclusion that Nellons had seventeen years of service with Bell Atlantic is accurate and thus not arbitrary and capricious.

Next, Nellons is mistaken in her argument that she is a participant in the Cash Balance Plan.  Though Bell Atlantic adopted a cash balance type pension plan in 1995, an employee became eligible to participate in that plan only if the employee worked on or after December 31, 1995.  Section 16.3.1 of the Cash Balance Plan states this and the Verizon Claims Review Committee communicated this to Nellons.  Specifically, section 16.3.1(a) states that the pension benefit for all 1995/1997 Terminated Vested Participant's "shall be maintained, without cutback, as a Pre-Cash-Balance Terminated Vested Pension."  A 1995/1997 Terminated Participant "means (a) an individual who was an Active Participant in BAMPP or any prior plan prior to December 31, 1995, who was

17

not an Employee under BAMPP as of such Transition Date." See Defendants' Exhibit 8,

at V 01051.  The Transition Date for the Cash-Balance Plan was December 31, 1995.

Nellons, who was a participant in the BAMPP, was not an employee as of December 31,

1995.  Therefore, Nellons was a 1995/1997 Terminated Vested Participant.  A Pre Cash

Balance Vested Pension

> means a pension benefit which a 1995/1997 Terminated Participant [which,
> the Court has established, includes Nellons] . . . which has not been converted
> to an opening balance in a Cash Balance Account.  In the absence of an
> amendment of this Plan having the effect of converting a Pre-Cash-Balance
> Terminated Vested Pension to a Cash Balance Account, a 'Pre-Cash-Balance
> Terminated Vested Pension' shall at no time be converted to a Cash Balance
> Account and shall continue to be expressed as an annuity in the normal form,
> as applicable, in accordance with the terms of the Prior Plan which were in
> effect with respect to such individual's last Separation From Service Date prior
> to the Transition Date."

Defendants' Exhibit 8.

Because no amendment converted the pension benefit available to a

1995/1997 Terminated Vested Pension to a Cash Balance Account and because the

Verizon Plan did not disturb these provisions of the Cash Balance Plan, Nellons's benefit

is properly expressed as an annuity, not a cash balance account.  Therefore, the

conclusion by the Verizon Claims Review Committee that Nellons is eligible for an

annuity calculated under the BAMPP–and not a cash balance pension under the Cash

Balance Plan–is accurate and not arbitrary or capricious.

Finally, no plan provision entitles Nellons to receive any payment before

the year 2007, when she will be eligible for a reduced pension benefit.  Having

established that Nellons is properly credited with 17 years of service with Bell Atlantic

18

and that she is entitled to a pension benefit under the BAMPP, not the Cash Balance Plan, the remaining task is to interpret the BAMPP, the Cash Balance Plan, and the Verizon Plan, to determine when Nellons can begin receiving benefits.  Section 5.1.1(b) of the Cash Balance Pension Plan states that participants in the Pre-Cash-Balance Terminated Vested Pension cannot elect to begin receiving pension payments on a date that is earlier than the earliest date provided under the terms of the BAMPP.  In other words, the Cash Balance Plan states that the BAMPP governs when Nellons can begin receiving a pension benefit.  Section 4.4 of the BAMPP, applicable by way of 5.1.1(b) of the Cash Balance Plan and subsequently by section 6.6 of the Verizon Plan, states that pension benefits under the Deferred Vested Pension plan can commence when the retiree reaches age sixty-five.  A retiree such as Nellons, i.e., one with more than fifteen but less than twenty years of service, who wishes to receive a pension benefit earlier than age sixty-five can elect to begin receiving pension benefits when she reaches age sixty.  See section 4.4(b)(2)(A) of the BAMPP.  As mentioned above, Nellons was born June 21, 1947, making her fifty-seven years old.  She has seventeen years of service credit.  Therefore, Nellons can elect to receive benefits as early as June 21, 2007, but no earlier.  No subsequent changes to the pension plans have changed this date.  The Verizon Claims Review Committee reached this same conclusion and communicated it to Nellons.  The Court agrees with this conclusion and thus finds it to be neither arbitrary nor capricious.

Because the Court has concluded that Verizon made the appropriate

determination with respect to Nellons's claim for an immediate lump sum payment of her pension benefit, the Court will grant Verizon's motion for summary judgment.

### B.  Claims Regarding Verizon's Failure to Provide Plan Information

The Second Count of Nellons's Complaint relates to the alleged failure of Verizon to provide Nellons with quarterly cash balance account statements and other pension-related information.  First, there is no evidence that Verizon refused to produce for Nellons any documents it had related to the 1989 FMP.  Second, there is no evidence that Verizon breached a fiduciary duty owed in its maintenance of the 1989 FMP records.  Third, Nellons was not a participant in any cash balance plan.  Therefore, she was not entitled to receive quarterly cash balance statements.  Further, the type of pension plan notwithstanding, there is no evidence that Verizon failed to provide Nellons with information relevant to her entitlement to pension benefits as she requested it.

Accordingly, the Court will grant Verizon's motion for summary judgment with respect to Count two of Nellons's Amended Complaint.

_____

**IV.  CONCLUSION**

For the reasons stated in this Opinion, the Court will grant Verizon's motion for summary judgment.  Necessarily, this means the Court will deny Nellons's motion for summary judgment on the same issues.  An Order will follow.


s/Robert B. Kugler

Dated: 5-26-05                          ROBERT B. KUGLER
                                        United States District Judge